UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| **GENARO J. PEDROARIAS**<br>9212 Sterling Montague Drive,<br>Great Falls, VA 22066<br><br>    Plaintiff,<br><br>    v<br><br>**PERATON, INC.**<br>1275 Worldgate Drive, Suite 7322,<br>Herndon, VA 20170,<br><br>    Defendant.<br><br>    Serve: Cogency Global, Inc.<br>           250 Brown Hill Court<br>           Midlothian, VA 23114-9510 | No. 1:24-cv-283<br><br>(1) Unlawful Employment Discrimination Based on National Origin, 42 U.S.C. § 2000e *et seq.*<br><br>(2) Unlawful Employment Discrimination Based on Age, 29 U.S.C. § 621 *et seq.*<br><br>(3) Fraud in the Inducement |

## COMPLAINT

Plaintiff Genaro J. Pedroarias, by and through undersigned counsel, states the following as his Complaint:

1.  Defendant Peraton, Inc. ("Peraton") fraudulently induced Plaintiff, an expert cartographer, to leave his then-current position to accept employment by Peraton in connection with a government contract. Peraton represented that it would employ Plaintiff for a period of no less than seven (7) years. In reliance on Peraton's representations, Plaintiff accepted Peraton's offer. However, Peraton terminated him less than eight (8) months later, notwithstanding Plaintiff's exemplary performance. Peraton terminated Plaintiff for no legitimate business reason; instead Peraton terminated Plaintiff on the basis of his national origin

and/or his age. Peraton admits Plaintiff's termination "may very well have been the result of bias…."

2. Peraton subsequently submitted to the U.S. Equal Employment Opportunity Commission false and misleading statements that are internally inconsistent and contradicted by Peraton's own actions and other statements. Peraton defrauded Plaintiff and violated his civil rights. This Court has original jurisdiction over Plaintiff's federal claims and supplemental jurisdiction over Plaintiff's common law claim.

## PARTIES

3. Plaintiff is an individual residing at 9212 Sterling Montague Drive, Great Falls, VA 22066. As of the date hereof, Plaintiff is 53 years of age, a U.S. citizen by birth, and of Cuban American Heritage.

4. Defendant is a stock corporation organized and existing pursuant to the laws of the State of Maryland, having its principal place of business in the Commonwealth of Virginia at 12975 Worldgate Drive, Suite 7322, Herndon, VA 20170-6008. This Honorable Court has personal jurisdiction over Peraton pursuant to Va. Code § 8.01-328.1 based on, *inter alia*, Peraton's maintaining its principal place of business, employing Plaintiff, and committing the unlawful acts comprising the within action in the Commonwealth of Virginia.

## JURISDICTION

5. This Honorable Court has subject matter jurisdiction over Plaintiff's federal law claims pursuant to 28 U.S.C. § 1331, Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e through 2000e-17, and the Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621-634.

6. This Honorable Court has subject matter jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. § 1367(a) because that claim is so related to the federal claims in this action that it forms part of the same case or controversy under Article III of the United States Constitution.

7. Plaintiff submitted the within claims to the U.S. Equal Employment Opportunity Commission ("EEOC") and, by a determination dated November 27, 2023, the EEOC issued formal notice of Plaintiff's right to sue Peraton in this Court.

## FACTUAL ALLEGATIONS

8. Plaintiff is an experienced and accomplished Cartographer and Geospatial Analyst. He has worked in this field for over 25 years and has held security clearances as necessary to various positions he has held.

9. Plaintiff earned a Bachelor of Science degree from California State Polytechnic University in Pomona California in 1997, with a major in geography and minor in geology.

10. Plaintiff earned a certification in Geospatial Intelligence at George Mason University. In 2017 the National Geospatial Intelligence Agency certified Plaintiff as a Geospatial Intelligence Professional. The Department of Defense has certified Plaintiff to teach Geospatial Intelligence. Governor Youngkin appointed Plaintiff to the Virginia Geographic Information Network Advisory Board in July 2022.

### Peraton's Representations to Plaintiff

11. As of July 2022, Plaintiff was employed at TEKsystems, Inc., with an expectation that he would be employed there indefinitely.

12. On July 18, 2022, Tom Fleming, a program manager at Leidos, Inc., a Peraton subcontractor, contacted Plaintiff and suggested he was an excellent candidate for a position

as a Senior Cartographer on the Narsil Program. Mr. Fleming told Plaintiff Peraton would have to approve his hiring and said he would arrange for Peraton to contact Plaintiff directly.

13.     On July 26, 2022, Donald Korinchak, who at the time was a Peraton employee and the Narsil Task II Lead, called Plaintiff for a telephone interview. The interview took place at approximately 1 PM and lasted approximately 30 minutes. During the call, Plaintiff made clear his material concerns about leaving a steady position at TEKsystems. In particular, Plaintiff told Mr. Korinchak that he was interested only in a long-term position, and that in the past he had been engaged on a Department of Homeland Security ("DHS") contract that ended shortly after he was hired. He told Mr. Korinchak he would not take another position absent a guarantee that the DHS incident would not be repeated.

14.     Mr. Korinchak aggressively recruited Plaintiff on behalf of Peraton, and in particular represented to Plaintiff that Peraton could offer him employment for at least seven years. Among other things, Peraton represented to Plaintiff that:

   a. Peraton would employ him on the Narsil Program for at least seven (7) years.

   b. The Narsil Program was "well-funded."

   c. That there was sufficient funding for seven years of employment and that there was "no chance" the Narsil Program would be "de-scoped."

   d. That the Narsil Program had resources for at least four Cartographers.

   e. That there was more than sufficient work for Plaintiff and, in fact, at that time the Cartography contract task was "behind" on the work assigned to the current cartographers.

15.     Peraton knew that the promise of long-term employment was a material inducement to Plaintiff accepting an offer from Peraton to work on the Narsil Program.

16. Peraton knew, or should have known, that its representation of at least seven years' employment was false.

17. Peraton knew, or should have known, that the statement there was "no chance" the contract would be "de-scoped" was false.

18. Peraton made the above representations to Plaintiff in order to induce him to resign from his position at TEKsystems and accept an offer of employment from Peraton.

19. Peraton, through its subcontractor Leidos, extended an offer for Plaintiff to work on the Narsil Program as a Cartographer on July 25, 2022, and Plaintiff accepted the position with Mr. Korinchak's approval the following day.

20. Peraton suddenly terminated Plaintiff 8 months later on May 5, 2023.

### Peraton was Plaintiff's Employer

21. Although Plaintiff nominally was "employed" by a Peraton subcontractor, Leidos, Inc., Peraton was Plaintiff's employer or co-employer.

22. Peraton controlled the day-to-day performance of the work by Plaintiff.

23. Peraton recruited him, interviewed him, supervised him, and terminated him.

24. From his recruitment through his termination, Peraton dominated every aspect of Plaintiff's work on the Narsil Program, including total authority over (a) his hiring, (b) the supervision and control of his work, and (c) his unlawful termination.

25. By way of example, Peraton provided Plaintiff with login credentials to Peraton's time-keeping system and required Plaintiff to enter his time on that system on a daily basis and submit his time to Peraton on a weekly basis.

26. At all times Peraton employees supervised Plaintiff's work. His first immediate supervisor was Peraton employee Carolyn Brinkley. Thereafter, Peraton employee Rondell Shields became Plaintiff's immediate supervisor.

**Plaintiff's Exemplary Work Performance**

27. Ex. A hereto is Plaintiff's 2022 Annual Performance Review. As stated therein, Plaintiff earned a "Valued Performance" overall rating and his contributions to Peraton and the Narsil Program are described as "meeting expected level of performance definitions across all three elements (Results, Impact, and Behaviors)."

28. The National Security Council and Directorate of Intelligence publicly commended Plaintiff for the quality of his work.

29. On December 15, 2023, Plaintiff received an unsolicited email from Brian DeShong, one of the client supervisors of a task known as the "Africa Project." Consistent with other client representatives who were shocked at Plaintiff's sudden termination, Mr. DeShong states:

> Sorry for not emailing sooner (I didn't write your email down initially, and then lost my Skype history, and I only recently found a way to recover old skype chats).
>
> *The paper you helped with was a massive hit. Everyone loved it, especially the maps, and it got a ton of high-level attention.* Now that I'm back at my home office, I'm trying to get it re-released so we can share it with our foreign partners in the region.
>
> (Ex. B hereto; emphasis added)

30. Prior to Peraton's sudden termination of Plaintiff, he had no reason to believe there were any deficiencies or other problems with his work and work product.

**Peraton's False and Inconsistent Statements**

31. Since his termination, Peraton has taken flatly inconsistent positions as to the reason for his termination, not only in communications with Plaintiff, but also in Peraton's submissions to the EEOC. First, Peraton claimed Plaintiff was not terminated for reasons having to do with his performance. Instead, Mr. Shields stated Plaintiff's termination was due to the unfortunate circumstance of insufficient funds to retain him.

32. Indeed, based on Plaintiff's contemporaneous notes of his final meeting with Mr. Shields, on April 24, 2023, Mr. Shields stated "If I had another cartographer opening, I'd put you right there."

33. That statement is demonstrably false and merely a pretext. Within a short time of Plaintiff's termination, no less than six separate recruiters for Peraton have approached Plaintiff to fill the very position from which he was terminated. Peraton was searching for a cartographer with the same skill set as Plaintiff, at the same salary, to work on the same contract, no later than two months after his sudden dismissal.

34. *As Mr. Shields stated on April 24, 2023, when Plaintiff asked if his termination was the result of "bias," Mr. Shields admitted "that could very well be" the reason.*

35. Based on Peraton's extraordinarily inconsistent and incredible submission to the EEOC, and that both of Peraton's stated reasons for terminating him – insufficient funds and poor performance – Mr. Shields' admission is spot on.

**Peraton's Fantastic Submissions to the EEOC**

36. As noted above, Mr. Shields stated without qualification that Peraton's termination by Plaintiff was not performance based, but instead was due to financial reasons and

contract de-scoping. When Peraton was forced to respond to Plaintiff's Charge to the EEOC, Peraton abandoned that position and adopted the position that Plaintiff's performance *was* the cause of his termination. Peraton's internally inconsistent positions as to the reason for Plaintiff's termination require the inference that Peraton's actions were discriminatory and unlawful.

37. Plaintiff filed a Charge against Peraton for age discrimination and violation of his civil rights on June 23, 2023. Plaintiff also filed a Charge against Leidos as his nominal employer but focused the EEOC on Peraton as Plaintiff's *de facto* employer and the Company responsible for violating his employment rights.

38. On September 25, 2023, Peraton filed a Response with the EEOC that not only contradicts its representations to Plaintiff when Peraton terminated him. That Response is internally inconsistent, inconsistent with Peraton's stated reason for terminating Plaintiff, and is easily shown to be false and misleading by the exhibits attached hereto.

39. Contrary to Mr. Shields' contention that Plaintiff's termination was not at all performance related and could have been the result of "bias," in its Response to the EEOC Peraton claims it terminated Plaintiff entirely for performance reasons.

40. Peraton claims Plaintiff "was not replaced by anyone," but as set forth above, shortly after terminating Plaintiff Peraton retained multiple recruiters to replace him. Therefore, if Peraton had already filled Plaintiff's position, Peraton's statement is false. If Peraton has not yet filled Plaintiff's position, Peraton's statement may be true but it is misleading by implying Peraton terminated Plaintiff for financial or performance reasons.

41. At the same time Peraton terminated Plaintiff, it retained younger, less experienced cartographers not of Latin-American origin.

42. On information and belief, Peraton replaced Plaintiff with a younger cartographer, not of Latin-American origin.

43. According to Plaintiff's contemporaneous notes, when Peraton terminated him, but before Plaintiff brought a Charge with the EEOC against Peraton, Mr. Shields stated:

   a. "We are not firing you, but the spotlight is on you."

   b. The "[f]inal determination [to terminate Plaintiff] is the result of a de-scope and *not performance*." (Emphasis added)

   c. "The Narsil Program turned out to be more expensive than originally planned."

   d. "If I had another cartographer position opening, I'd put you right there."

44. As noted above, these statements are inconsistent with Peraton's conduct in seeking to fill Plaintiff's position as a cartographer shortly after his termination and refused to consider Plaintiff for this position.

45. These statements are also inconsistent with Peraton's Response, which contends Peraton terminated Plaintiff *for performance*.

46. Peraton's record statements are riddled with erroneous and misleading information, intended to disparage Plaintiff in support of Peraton's Response to the EEOC.

47. The Response is so detailed as to thoroughly refute any contention Peraton did not control Plaintiff's day-to-day performance of his work.

48. Detail does not equal accuracy, however, and Peraton's Response is comprised of pretextual, groundless contentions.

49. As but one example, Peraton describes one of its employees, Ms. Brinkley, as "White." In fact she is an African-American.

50. Peraton's Response contains additional statements that are demonstrably false, including the following:

    a. Peraton claims Plaintiff failed to timely complete his projects. This is false. Plaintiff had a 100% on-time completion rate, and no project was delayed by him.

    b. Peraton criticizes Plaintiff for taking a continuing education course, mocking it as "entry level." Peraton's description of the course, and Plaintiff's existing level of expertise, is false and misleading. He took the class at the suggestion of a Leidos manager to augment his design skills. Those skills were sufficiently advanced that during his last week at Peraton, he gave a presentation to Peraton's team demonstrating mastery of creating publication quality maps.

    c. Peraton claims Plaintiff failed to take on assignments because he lacked the "critical skills" necessary to complete them. Again, this is patently untrue. Plaintiff took on all assignments. While there were assignments Peraton reassigned from him to another employee, the reason had nothing to do with Plaintiff's skills or capabilities. Instead, the reason was workload; other employees in the cartography section needed work.

    d. Peraton describes a February 27, 2023, meeting at which Mr. Shields purportedly discussed "performance deficiencies" on Plaintiff's part. This is misleading. At that time Mr. Shields' entire department was under criticism. Formal meetings among the entire team were held on March 1 and April 20, 2023, at which Mr. Shields stated "[T]here are things across the board that need to improve."

        Mr. Shields' failure to meet expectations was by no means attributable to Plaintiff.

    e. Peraton denies representing to Plaintiff that the contract was of at least seven years' duration with no chance of descoping. However, Plaintiff will introduce testimony and contemporaneous records that the conversation took place exactly as described by him.

    f. Peraton instituted a Quality Control program that was inconsistently followed by Mr. Shields and Plaintiff's other Peraton supervisors, leaving Plaintiff without proper guidance concerning communications with the government client.

51. Peraton's own statements establish that its non-discriminatory reasons for firing Plaintiff are incredible and pretextual.

52. Plaintiff has met his burden of raising an inference of discrimination: Peraton's conduct cannot be explained by the non-discriminatory reasons Peraton offered and then contradicted in writing and by its actions.

53. Plaintiff is thus entitled to a presumption that Peraton's conduct is unexplained except as based on consideration of impermissible factors; *i.e.*, his age and his national origin.

54. As a direct and proximate result of Peraton's acts and omissions described herein, Plaintiff suffered damages including lost income, damage to his reputation in the cartography industry, and other damages.

## FIRST CAUSE OF ACTION
## FRAUD/NEGLIGENT MISREPRESENTATION

55. Plaintiff incorporates the previous paragraphs of this Complaint as if fully set forth herein.

56. Peraton represented to Plaintiff that he would be employed for at least seven years and that there was no chance the Narsil Program would be de-scoped.

57. Peraton knew, or should have known, these representations were false or were made with reckless indifference to their truth.

58. Alternatively, Peraton knew, or should have known, that it lacked the knowledge necessary to have made the representations to Plaintiff.

59. Peraton knew the representations were material to Plaintiff.

60. Peraton made the representations to induce Plaintiff to voluntarily terminate his then-current employment and agree to work on the Narsil Program.

61. Plaintiff reasonably relied on the representations by voluntarily terminating his then-current employment and agreeing to work on the Narsil Program.

62. On May 5, 2023, Peraton suddenly terminated Plaintiff, some eight months after hiring him.

63. As a direct, proximate, and foreseeable result of Peraton's fraudulent or negligent misrepresentations, Plaintiff has suffered, and will continue to suffer, damages in an amount to be determined at trial.

**SECOND CAUSE OF ACTION**
**UNLAWFUL EMPLOYMENT DISCRIMINATION BASED ON AGE**

64. Plaintiff incorporates the previous paragraphs of this Complaint as if fully set forth herein.

65. On May 5, 2023, Peraton discriminated against Plaintiff in a serious and tangible way by terminating his employment. At all times, Peraton acted intentionally and with malice.

66. Plaintiff's age was a determinative factor in Peraton's termination of him.

67. At the time it terminated Plaintiff, Peraton retained other, younger cartographers.

68. Upon terminating Plaintiff and claiming his termination was due its financial inability to retain him, Peraton was, or began, recruiting for a replacement cartographer younger than Plaintiff.

69. On information and belief, Peraton replaced Plaintiff with a younger cartographer.

70. On May 23, 2023, Plaintiff filed an EEOC Charge against, *inter alia*, Peraton for unlawful discrimination based on his age and national origin. On November 27, 2023, the EEOC dismissed Plaintiff's charge without deciding the merits of Plaintiff's claims.

71. As a direct and proximate result of Peraton's acts and omissions described herein, Plaintiff suffered damages including lost income, damage to his reputation in the cartography industry, and other damages.

### THIRD CAUSE OF ACTION
### UNLAWFUL EMPLOYMENT
### DISCRIMINATION DUE TO NATIONAL ORIGIN

72. Plaintiff incorporates the previous paragraphs of this Complaint as if fully set forth herein.

73. On May 5, 2023, Peraton discriminated against Plaintiff in a serious and tangible way by terminating his employment. At all times, Peraton acted intentionally and with malice.

74. Plaintiff's Cuban-American heritage was a determinative factor in Peraton's termination of him.

75. On May 23, 2023, Plaintiff filed an EEOC Charge against, *inter alia*, Peraton for unlawful discrimination based on his age and national origin. On November 27, 2023, the EEOC dismissed Plaintiff's charge without deciding the merits of Plaintiff's claims.

76. At the time it terminated Plaintiff, Peraton retained other cartographers not of Latin-American heritage.

77. Upon terminating Plaintiff and claiming his termination was due its financial inability to retain him, Peraton was, or began, recruiting for a replacement cartographer not of Latin American heritage.

78. On information and belief, Peraton replaced Plaintiff with a cartographer not of Latin American Heritage.

79. As a direct and proximate result of Peraton's acts and omissions described herein, Plaintiff suffered damages including lost income, damage to his reputation in the cartography industry, and other damages.

**WHEREFORE**, Plaintiff respectfully requests this Honorable Court enter judgment in favor of Plaintiff and against Peraton, including the following:

A. Damages in the amount to be proven at trial of $300,000;

B. Punitive damages in the amount of $350,000;

C. Statutory prejudgment interest in an amount to be determined;

D. Statutory attorneys' fees and litigation expenses; and

E. Such other relief as the Court deems just and appropriate.

February 23, 2024                                        Respectfully submitted,

GENARO J. PEDROARIAS

**By: SHAWN COULSON LLP**

-15-

        Cameron McBride (VSB35831)
        2000 Duke Street, Suite 300
        Alexandria, VA 22314
        (912) 655-1736 (p)
        (202) 747-5862 (f)
        cmcbride@shawncoulson.com

        *Counsel to Plaintiff*